The second case is Barry Conner v. and Bridget Conner v. the Commissioner of the Internal Revenue Service. You added a chart that you've given us the individual documents for, so we've got them. You're more than free to put it up there if you want to do that. Good morning, counsel, and you may proceed. May it please the court, my name is Chuck Hodges, and I represent the taxpayer appellants Barry and Bridget Conner in this post-recession real estate tax case. Your honors, by misapplying the tax statutes at issue, the tax court found that a 40-year veteran of the real estate industry and the ultimate developer of the properties that you see should be treated no differently than a stockbroker or a surgeon, for tax purposes, buying their first piece of undeveloped land. And by making such holding, the court wiped out all of this 40-year tax or 40-year real estate, all because he couldn't sell enough property or subdivide enough property during the most devastating financial times of his life. And the court did this at a time where they were aware, and even in the opinion state, that Mr. Conner had an 860 lot under contract for West Honolulu, which is here, which he developed all that is in color, but 860 home site on Lake Lanier, age restrictive, they still found that he is to be treated like a surgeon and a stockbroker with their first piece of land. With that, I have a few comments that I would like to make, some brief independent points, and hopefully I will be able to get to each of them in detail next. But the first one is, first of all, we're dealing with the issue of trader business. Sales are not required to have a trader business in real estate under 162. Tax court misapplied. Well, he put this land, or it was already, some of it was already, in conservation. And how is that consistent with a trader business? Okay, Your Honor. I have trouble with that. Okay, Your Honor, let me address. First of all, the opinion, which factually and correctly states, Mr. Conner, first of all, this is not a conservation easement. No, I'm not. Okay, conservation use, which is just a tax savings under Georgia law. Which means you're not going to develop it. Well, it just simply means you're not going to develop it for that year. And so, therefore, you get a 40% value reduction for that year, and then once it's developed, you do incur the penalty and the back taxes, but you split that with the buyer. Just like here, this is the property you're talking about, West Hialuna. It was under this conservation use. It was under contract for, that's Lake Lanier, it was under contract in 2016, which shows his intent never changed. This was simply a matter of how can I save money during this horrible, horrible financial time. Let me ask you a question. You would agree, would it not, that the tax course determination that Conner could not deduct the expenses of the LLCs as business expenses because he concluded that the expenses were properly characterized as investment expenses, that's finding a fact, is it not? It is just the underlying facts are, but . . . Right. The underlying facts, which yielded a legal conclusion, is what we're really exploring. And you've got to show, do you not, to the extent that these are the underlying facts found by the tax court, that they were found in a manner that was clearly erroneous. Even if I would have looked at the facts and reached a different determination, you lose unless you can show that that court's determination was clearly erroneous. So if there's some reasonable body of fact that support the conclusion, you lose even if you might have convinced me if I was sitting at the trial judge. You agree with all of that? I do not, Your Honor. I respectfully disagree. You don't agree with any of that. Okay. Tell me what I have wrong. Okay. So one, the facts are not really in dispute. The facts are not in dispute and we're talking about the interpretation of the phrase trader business under Section 162. Okay. So you're saying it's a mixed question of law and fact that we're not obliged to defer to?  And in your case, in Borey as well as, there are countless cases, Your Honor, but Borey is the main one which says that whether or not you have a trader business is a mixed question of fact and law. And on that score, and also here, the tax court misapplied the trader business test which would be another de novo review. Why? Because sales are not required to have a real estate trader business under the U.S. Supreme Court authority under Grotzinger. All instead, all you need to have are regular continuous activities. And I will tell you, the tax court using this theory of you need sales to be a real estate trader business, what they did was they took it from another case which is your Winthrop factors which doesn't deal with the day-to-day expenses. That deals with the sale of a capital asset. Why is that dangerous? Because these cases that talk about sales and how many sales you have to have, they were dealing with 800, 900-acre tracks in Atlanta, Miami, other large cities. We don't have those size tracks anymore, so it's a dangerous proposition. So one, Grotzinger only required that Mr. Conner, which the facts are in the record and we don't dispute any of them, is that Mr. Conner did development activities every year that would rise to the level of a trader business. And even to show where I believe the tax court really got sideways, and this one is an easy one to resolve, is the tax court continued to say that Mr. Conner was in the exploratory stages, in the beginning stages. This court has already put an end to that issue when they reversed the tax court in Sorrell and basically said, if you get, so we wanted 162 deductions which are business expenses. The IRS gave us in the notice, and the tax court agreed, 212 investment expenses. Sorrell from this court said, we're going to read those together and you are assumed to already be in the activity. So to use, Judge Marcus, your language from the last case, this issue is dead as far as the exploratory aspects of the tax court opinion as well as the IRS brief. Those parts, that's a dead issue because of this court's opinion in Sorrell. Next, we go to the actual sale of the Lake Lanier property at a $2 million loss. The tax court found that. If that doesn't show why he didn't sell a lot of land, I don't know what does. But what happened there? You have the wind-threat factors that were asked that the Fifth Circuit said to apply, but they said it's a facts and circumstances situation. The tax court did a quasi-bright-line approach and said, no, you have sales or you subdivide, then if you don't do those, you lose, which ignores the whole facts and circumstances test under Winthrop as well as any of the precedent. The next point I want to move on to is that there's been no case like this. Think about it. This is a 40-year real estate veteran and there's been never a case where the tax court has even brought it, much less as a court found, that somebody. Let's take one example. I'm just trying to work through this. If you take Shoreline and they do look at sales there and they said they had a single sale over eight years. Is that wrong? No, that is correct. It was one sale in 2013 for a $2 million loss during the recession. But still, one sale over eight years. So that was before the recession started. I mean, the sale was 2013, so that would be 2005. Yes, Your Honor. So in 2005, this is Lake Lanier property and so he had to do all of the things you have to do. He had to go to the board, the local county boards, and get all of this for it, which he did. But is that undisputed fact indicative of maybe it was for investment? No, Your Honor, because he actually had the development plans and got it approved for a 94 lots to be subdivided. But unfortunately, by the time that was done, it was 2009, which we're right in the middle of the recession. So then all he continued to do was . . . Okay. So the tax court says from 2007 to 2013, the petitioner did nothing to further development. It just sat there. Is that fact finding correct? That is not correct, Your Honor. Instead, what he tried to do was the bank said, we're going to take this property from you. So he continued to draw different plans from a 94 home sites down to 20, down to 16, and he tried every way to get the bank to finance the actual development, the actually moving of the dirt. And he could never get the funds. Because he couldn't get financing, there was no development during 2007 to 2013. That is correct. That is correct. Okay. And you're saying he tried to get financing, that's what he did during that time. Is there any other activity than trying to get the financing? I know he drew up these plans. Did he do them himself or did he hire a surveyor or how did that go down? I see that I'm out of time, but if I could answer your question. He continued to do, he did the pro formas, which to show how much profit could be made if the bank gave him lesser amounts. But he also continued, so drawing up different plans, which he did. And then two, he did the boat docks to went to the community, went to the Corps of Engineers. But I think that the most important thing to look at is once he was forced to sell it by the bank, and the tax court agrees with that fact. He sold it for a $2 million loss. So if there is no facts and circumstances test, that would be letting the tax tail wag the dog. You have to sell, real estate person, your property at millions of dollars of losses to show you're actually in the real estate business. That's an unfair test. I see that I'm out of time. Thanks much. And you've reserved your full five minutes, Mr. Hodges, for rebuttal. Thank you. If you'd be kind enough to take down your chart as Mr. Hutter proceeds, I'd be much appreciative. Good morning, Mr. Hutter. Good morning, Your Honors. May it please the Court. Randolph Hutter for the Commissioner. Would you tell me at the outset, as I read the tax court opinion, what are the critical facts that are not in dispute, and what are the findings of law, the mixed questions that we reviewed in Oval? As you see it. Well, I believe that this is basically a factual question. And the Court found in particular, well, you start off with the requirement for what is a trade or business. A trade or business must be an activity that is an ongoing concern, functioning as a business and carrying out the purpose for which it was designed. And the facts do not support that the LLCs at issue here were a trade or business. They may have been purchased originally for development purposes, but on these properties, no development, no dirt was ever moved. No lots were subdivided. No advertising was ever done. No buyers were sought for these properties. They sat from 2007, 2008, up until the tax years at issue, 2012 and 2013, with no development going on. There may have been plans to develop these lands, but it's not clear exactly . . . Okay. So those are underlying building blocks of fact, which we review only for clear error. That's clear, right? Yes, Your Honor. Then when the tax court makes the determination that Conner could not deduct the expenses of the LLC as business expenses because they were properly characterized as investment expenses, you would agree, I take it, that that's a mixed question of law, in fact, that we review de novo, that determination? Yes, Your Honor. Okay. Yes, Your Honor. And the tax court correctly found that the facts did not show that a trade or business was going on. The LLCs were not engaged in any business. We will certainly recognize . . . Well, your other counsel says really the core facts here are not disputed. That's true. You just listed them. No dirt was moved. No lots divided. No sales. Yes. So do you basically agree the core facts from which we then apply the law are not disputed here? Yes. Whatever easements or conservation protections he got and benefits are not disputed, right? That's correct. I would . . . I have a different take on . . . What fact is disputed that you think the tax court found that is important to this case? Well, I know what the appellant disputes. The appellant disputes the fact that the tax court did not look at the recession as having any effect on his trade or business. And I agree with the tax court that the recession is irrelevant because no trade or business ever got off the ground. There are cases that show that economic situations can stop a trade or business from going on . . . So we would look at that question for abuse of discretion. Was it an abuse of discretion to keep that evidence out? Oh, the evidence was not kept out. The tax court just said that's not important. So it was considered . . . Oh, yes, sir. Okay. Oh, yes, absolutely. The tax court did consider . . . And he says it's important to the analysis here of whether he was trying to do a trade or business with the recession. Yes. Yes. And he was taking steps toward that. He was taking steps toward development. What if he had . . . maybe I shouldn't ask this, but what if he had sold three lots at or whatever the . . . I can't remember. Yes. Yes. Any of the West Daha Loona . . . And people were living there. I mean, people, he'd sell them and they were building houses and all. But still, the business was a flop and he had to sell the rest of the land. In part, it would depend on when those sales took place. We're looking at the tax years of 2012 and 2013. What if those sales occurred in 2008 and then nothing happened again ever? We would say that that particular property then at that time was not held for any kind of development because a trade or business wasn't going on if the same facts remain true. He didn't develop anymore. He didn't move any dirt. He didn't advertise. He didn't meet with buyers, et cetera, et cetera. But he did do some things. He did do some things and then he stopped. He did do some things at the beginning. He apparently got some plans together, then he had ideas. But I don't think that he ever got something going that you would call a trade or business because a trade or business requires some selling going on and some profit to go on. And it stopped. It may have stopped largely because of the recession, but it stopped. And so at the time, you look at the property at the time and what it was doing during the tax years at issue and development had ceased, had never really started. And no trade or business had ever been going on. And he's saying, I did have a trade or business. I was doing some things, but because of the recession, I couldn't take the next step, which is sales. Well, the next there are a lot of next steps, such as such as charting out the lots that are going to be subdivided and moving some dirt and planning. Those are the startup. And he says to that, because there was no market at the time, I couldn't get the banks to finance the infrastructure costs, let's say. Yes. So he's basically holding this property, waiting for a better market to come along. That's the that's kind of the definition of investment property. And we do have I do have a question, a dispute with his comment about the conservancy program. I believe there's evidence in the record, although I don't can't put my finger on it right this moment. But I also looked at the website for the Georgia Department of Resources and a conservancy program outlined there was a 10 year program. It's not just do it on a one year program and then you get lower taxes and then you can do whatever you want. The next, you know, you agree for 10 years not to do anything with this program. And if you ever do develop instead, then you pay, as the website says, you pay a rather hefty price. You have to pay your tax gains back. And and I think maybe twice what you've you've gained in tax from the state revenue. So I think that's a different the tax court did not take into account, did not decide that the cost that had been incurred were exploratory costs and and might have been capitalized. We gave that argument to the tax court as an alternative. We said tax court, these are either expenses tied with investment property or at best they are expenses in the beginning of a trade or business that have to be capitalized. The tax court did not follow our second argument. It said, you're right, they're investment expenses because this property was held for investment. So the tax court did not rely on the idea that these were exploratory and startup expenses. We're also not wiping out all of the taxpayers losses. He's got a big business. He has a whole nother corporation. He's got other tax treatment of those profits and expenses. It's a 200 plus employee corporation that operates all over this area and 12 or 13 states in the country. Those tax issues are not affected. These tax issues in this case are not just totally wiped out again. They become put on Schedule A. They're limited and to some extent he may be able to carry forward them to future years. They're not just eliminated. You can't have these expenses. What are their investment expenses that may be taken up to the extent of investment income? There's also the issue of material participation and passive activity. The tax court found that, well, you may remember on the stand vaguely that you spent over 100 hours a year on each of these LLCs, but you're not backing it up with any kind of calendar notes or or appointment calendars. Make sure I understand this case. The way he scheduled them, did that allow him to be offset ordinary income? Is that what we're talking about here? Yes. So it's whether it offsets ordinary income. Yes. Of the owner of the property. So he could be making ordinary income from other endeavors. Yes. And this would, if it was on as scheduled, it offset ordinary income. Correct. And if it was scheduled as expenses for investment, there wouldn't be an annual offset and the offset would only be against capital gains later on. No. Or would it be just still annual? It's just limited on Schedule A. Schedule A is a different schedule for investment expenses and other miscellaneous expenses. But it has a cap. Yes. Well, technically it has a floor. On Schedule A, it has a 2 percent floor. And you take 2 percent of adjusted gross income and you can only deduct the expenses that exceed that 2 percent floor. So it goes against ordinary income as well, but with a 2 percent? And in this case, the. What? Tell me what it is. Yes. Annualized. Yes. It is an annual deduction. Yes. And in this case, investment expenses are also passive activities. And so the expenses must be taken against investment income. Therefore, it is limited in very various ways. But it's still both of them are annualized. That's what I'm trying to understand. Investment expenses don't have to wait to the sale. They are annualized. That's correct. Absolutely. And the other trader business is against not only the income from this trader business, but other ordinary income. Is that right? Listed on that same return. Yes, that's correct. Well, it has to be the same taxpayer, but it doesn't have to be the same endeavor. It doesn't have to be the same entity. That's correct. You tote them up on Schedule C and you pass them forward. OK, but tell me again how a investment income, it can be taken annualized, but it's against other passive investment income or others. Yes, that's true. There's a 2 percent floor. What does that mean? I'm not sure I understand. You take 2 percent of the annual adjusted gross income of the taxpayer. Let's say that adjusted gross income. Adjusted gross income. You're talking about both wages and passive investment income or just you're talking about total income. Yes, total income. So you take total income. Let's say someone has a total adjusted income of ten thousand dollars in one year. Right. Two percent of that, of course, would be two thousand dollars. Where's that? Twenty percent. That's twenty percent. All right. Two hundred dollars. Two hundred dollars is ten percent. Two percent. And then you cannot take anything that's under the two percent. So if you've only got one hundred and fifty dollars in expenses, you can't deduct it. If you've got two hundred and fifty dollars in expenses. But can you deduct everything that's over the two hundred dollars? Exactly, exactly. So these losses and expenses are not totally limited to and the IRS is not saying you never can take any of these. He can take some of them. It's just that it just has to be characterized. And one reason that this particular case is important is because Mr. Conner has future cases that he may bring and and other dealings that that may impact the future. And we want to make sure we get the ducks in order for every tax year that he reports. The last issue that, of course, is important is the net operating loss, which was reported on a 2011 return. And Mr. Conner wants us to use that carried forward to 2012. And he argues that it's res judicata from that year when what the commissioner did in that year was stipulate to a decision that he had no liability, no deficiency for that year. And we argue and the tax court found that there was a res judicata did not apply for one thing, because every tax year is a separate cause of action and also because there was a separate stipulation agreement in 2011 for that decision. Did he take part of the NOL in 2011? I believe he did, yes. And so he says the commissioner said it was OK, so I should be able to carry it forward to 2012. Is that the argument? He says, yes, he does. And he says that the commissioner conceded it in 2011. I take serious dispute with that language. The commissioner did not concede that in 2011. The commissioner stipulated to an agreement to not litigate that case further. Therefore, nothing was litigated, nothing was decided. And there's a stipulated agreement. It's Exhibit 8 to the stipulation of facts, and it's included in the excerpts of record. And the commissioner solely stipulated to the decision, to the amount of tax for that year. When we get to 2012, that claim and the carry forward that he wishes to carry forward, that's evidence that he has to, and a claim for $500,000 in carry forward losses that he has to prove up. He did not choose to offer any evidence. We asked for evidence and he did not choose to offer evidence. He just argued the race judicata. He just said race judicata. And the tax court correctly found that that does not apply. And that stipulation didn't apply to 2012. It was only for 2010 and 11. 10 and 11. Absolutely correct, Your Honor. If you have no further questions, thank you very much. Thank you, counsel. Your Honor, I want to hit first some of the things that were touched on first. You know, what if it was a flop? I think one thing that is crystal clear, and again, it's in the record. It's undisputed. What happened was Mr. Connor's intent was to develop West Honolulu. That was the goal because and this is Home Depot's down here on Dawsonville Highway, which this was all undeveloped. Mr. Connor owns almost all of this. This is Home Depot. He wanted to develop this into an age restricted lake. It's all Brown, West Honolulu. OK. I just read the tax court said he did a 10 year conservation easement on it. Is that correct? It's not a it's not a conservation easement, Your Honor. Excuse me, I misspoke. And the reason why is because that goes. It's not an annual. It was a 10 year conservation program. Which can, yes, Your Honor, which can be broken in any year as it will be here. Yeah, he'd have to breach it. I understand you can always breach your commitment to the state to conserve the property. Yes. And not get the reduced taxes and then pay the penalty for what you've already gotten. Correct. OK. So and so now this is under contract closing in July where it's 860 home sites. What happened was because he because of the recession, remember, Sembler was actually going to build he was going to build a mall here. But then, unfortunately, once that happened and it fell through because of the economy, he moved. Why is not the 10 year conservation program commitment, which can be breached, at least some evidence that he had decided to use it as investment property? Because, Your Honor, whether or not you have it as an investment property is not a year by year issue. Borey, this court's this court's decision in Borey is crystal clear. What was your original intent? I agree. It's not a year by year. That doesn't answer my question. I'm saying he why is that not some evidence from which you can infer that he was going had decided to go ahead and just hold it as an investment property? No, I know he could change his mind. Why is it not some evidence of intent? In this case, it is not evidence of intent because at the same time he did that, which the banks demanded him to do so, he would reduce his expenses. It at the same time he was going before Hall County to have this property zoned. So he was doing these two things simultaneously. And the record is clear again that he ultimately just by the time of trial had this property under sale. One point I want to make sure that we that I get to is because he couldn't develop this because of the recession, he moved down to the green areas, which is where now where he developed is Academy Sports. And all these shopping centers that you see in green because he learned from the banks that, look, the only way we're going to give you money for Dawsonville Highway is for you to become a cluster. Go down near Home Depot and build your way up, which is exactly what happened. Here is what did he ever get? It rezoned all of that brown. Yes. And it closes in July, Your Honor. And it's it's all over the line of what year this year it was under contract back then. We don't know that from the time the tax court. OK, but during the 11 and 12, you can tell me if I look at the record, I'll see applications to rezone during the tax years, 11 and 12, or I'll see them. They were subsequent 13, which is a year at issue. Excuse me. You're right. 12 and 13 started the applications in 13. Yes. And that is as well as Dawson, as well as Hall County, making him do a traffic impact study. Hall County made him do a traffic impact study because they said, if you develop this, there's going to be thirty five thousand cars on this two lane road. I want to make sure I hit a couple of points that that were not, I have to say, were not correct on on the front end. First of all, the tax court specifically says over and over, Mr. Conner was in the exploratory stage and so therefore he hadn't gotten started. The Sorrell opinion from this circuit shoots that down. If you give him to twelve investment expenses, this court says he's already commenced his activities. So that's a that is a dead issue. As to your question, Judge Hall, regarding investment expenses, you are capped. I want you to think about one tax return, which, Judge Hall, you mentioned one tax return on this. We've got in Brown, we've got it investment green on his tax returns. Trader business, green trader business, light brown is investment. This is because the IRS is saying we're going to do this on an annual basis. But my final point is this. If I come before this panel for this year, in a couple of years, do you think that the IRS is going to say, oh, all of West Honolulu, which sold in the millions, was investment and we're going to give you capital gain treatment? No, they're going to say you got to sell. So we're going to now treat you differently and we're going to treat you differently now, which means we gave you no good expenses while you were doing it. And we're going to hit you with we're going to we're going to hit you with ordinary income on the back end. So we're going to give you the worst of all worlds as you built this up, as you built all this property up, you get no business expenses. So therefore, no, no ordinary income expenses. But the second you sell it, we're going to say that it's ordinary gain to be taxed at 40 percent. Worst of all worlds. Thanks very much, counsel. Thank you both for your efforts. We'll proceed with the last case, Zurich American Insurance.